1   Latife Neu
    1825 NW 65th Street
2   Seattle, WA 98117
    latife@neulegal.com
3   (206)297-6349

Hon. Timothy W. Dore
Chapter 7

4

5

6

7

8

9            UNITED STATES BANKRUPTCY COURT
10      WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re: ) | **CHAPTER 7** |
| ) | |
| MAJID ABDULHAMEED ) | **Case No.  18-13841-TWD** |
| ) | |
|          Debtor. ) | |
| ) | |
| _____ ) | **Adv. Pro. No.** |
| ) | |
| ANNA TARASIUK, ) | COMPLAINT TO DETERMINE |
| ) | DISCHARGEABILITY OF DEBT PURSUANT |
|          Plaintiff, ) | TO 11 U.S.C. 523(a)(2), 523(a)(4) AND 523(a)(6) |
| ) | |
|    v. ) | |
| ) | |
| MAJID ABDULHAMEED, ) | |
| ) | |
|          Defendant. ) | |
| _____ ) | |

20   //

21   Plaintiff Anna Tarasiuk ("Tarasiuk") alleges as follows:

22                          **I.   PARTIES**

23   1.   Plaintiff Anna Tarasiuk (also known as Ganna Tarasiuk) is a resident of Bellevue, King

24        County, Washington.

25   2.   Defendant Majid Abdulhameed, (also known as Majid al-Hilali and Majid Alhilali),

26        hereinafter "the Debtor," is believed to be a resident of Federal Way, King County,

27        Washington, based on the address on his Bankruptcy petition (dkt. no. 1).

28

COMPLAINT

Latife Neu, Attorney at Law
1825 NW 65th Street
Seattle, WA 98117
(206)297-6349
latife@neulegal.com

1

## II. JURISDICTION

3. This Court has jurisdiction over this matter under Chapter 11 of Title 11 of the United States Code (the Bankruptcy Code) pursuant to 28 U.S.C. §§ 151, 157, and 1334.

4. This adversary proceeding is commenced pursuant to Rule 7001 et seq. of the Federal Rules of Bankruptcy Procedure and Section 523(a) of the Bankruptcy Code.

5. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## III. GENERAL FACTUAL BACKGROUND

7. Tarasiuk and the Debtor became romantically involved in early fall, 2016.

8. The Debtor represented to Tarasiuk that he was a trained software engineer with a degree from a German university.

9. In December 2016, the Debtor told Tarasiuk that due to workplace discrimination, he was being laid off from his job at the company PCG Consulting. He asked to move in with Tarasiuk, and she agreed to let him move in with her. Tarasiuk began to provide financial support to the Debtor.

10. After the couple began living together, Tarasiuk discovered that the Debtor's driver's license was suspended, that he was unable to obtain a checking account in his name or obtain insurance. Debtor claimed that all of these problems were the result of identity theft committed against him. Tarasiuk paid fees associated with restoring the Debtor's driver's license to good standing.

11. In February, 2017, the Debtor asked Tarasiuk for $3,050.00 to pay for his mother's eye surgery. Tarasiuk agreed to pay for the surgery and supplied the $3,050.00 payment. Later, Tarasiuk learned that Debtor's mother had not needed Tarasiuk to pay for her surgery. Rather, the mother had given $3,050.00 to the Debtor, which he spent. He then turned to Tarasiuk for funds to cover his misuse of the money.

12. After the Debtor was let go from PCG Consulting, he told Tarasiuk that he needed to take

COMPLAINT

Latife Neu, Attorney at Law
1825 NW 65th Street
Seattle, WA 98117
(206)297-6349
latife@neulegal.com

2

1         a training course at the cost of $2,500.00, which Tarasiuk gave him, and would continue

2         to require her complete financial support for the duration of the training.  The training

3         course was fictional.

4   13.    Once the (fictional) training course was finished, the Debtor claimed to be fielding a

5         number of good job offers, including multiple jobs with PCG Consulting  and Amazon.

6         The Debtor showed Tarasiuk emails and documents to prove that he was being offered

7         good jobs.  These emails were fraudulent and originated with the Debtor himself.  He

8         convinced Tarasiuk to continue to financially support him on the basis that he would soon

9         be well employed.

10   14.    In mid-2017, the Debtor claimed to be working at PCG Consulting once again, but

11         claimed that he never got paid.  He told Tarasiuk that once he received his wages at some

12         point in the future, he would repay Tarasiuk for money she was supplying to him.

13         Eventually, he claimed he had been laid off once again due to workplace discrimination.

14   15.    In mid- 2017, the Debtor began to tell Tarasiuk that he would be able to repay her for her

15         loans and ongoing financial support because his family was in the process of selling real

16         estate in Baghdad, Iraq.  At various times over the next year, Tarasiuk received email

17         communications ostensibly from the Bank of Baghdad, saying $25,000.00 would be

18         transferred to Tarasiuk via bank wire any day.  The plaintiff will show that the emails

19         from the Bank of Baghdad actually originated with the Debtor.  Ignorant of the deception,

20         Tarasiuk believed that she would be repaid for her financial support of the Debtor.

21   16.    At approximately the same time, the Debtor proposed marriage to Tarasiuk.  On the

22         understanding that she would be repaid by the Debtor through his work, family, or other

23         prospects, Tarasiuk advanced $3,000.00 toward deposits on wedding related expenses

24         (venue, photo/video, wedding planner).

25   17.    On numerous occasions, the Debtor used Tarasiuk's checkbook, credit cards, and debit

26         cards without Tarasiuk's permission.  These liberties caused stress in the home, and

27         forced Tarasiuk to begin hiding her cards and checks.

28

COMPLAINT

Latife Neu, Attorney at Law
1825 NW 65th Street
Seattle, WA 98117
(206)297-6349
latife@neulegal.com

1    18.    Among the unauthorized uses of Tarasiuk's cards was a July, 2017, purchase at a Seattle

2           QFC store where $425.95 was charged.  Debtor initially denied that he had made this

3           charge, and advised Tarasiuk to file a dispute with her bank.  Once the charge was proven

4           by QFC, the Debtor admitted making the charge and promised to repay Tarasiuk.  He

5           never repaid her.

6    19.    Shortly thereafter, in August, 2017, the Debtor forged a check for $2,000.00 to himself on

7           Tarasiuk's checking account, without Tarasiuk's knowledge or permission.  The check

8           was stopped by the bank, and Tarasiuk was called for an interview with the bank.

9    20.    In December, 2017, the Debtor sent a payment to the IRS toward his own tax debt using

10          Tarasiuk's checking account, also without Tarasiuk's knowledge or permission.

11   21.    To further demonstrate that Tarasiuk should continue to support him and lend him

12          money, the Debtor claimed that he had an interest in a house in Cologne, Germany.  The

13          Debtor convinced Tarasiuk that in order to get the house finalized to his name, substantial

14          taxes and legal fees would need to be paid.

15   22.    The Debtor told Tarasiuk that if she contributed to the cost of paying a German lawyer,

16          the Debtor would add her name to the title of the house.  This would, he claimed, enable

17          Tarasiuk to get an EU residency card, which would facilitate travel to and within Europe.

18          Tarasiuk believed the Debtor.

19   23.    The Debtor claimed to have engaged a German attorney named Oliver Bierhoff.

20          Beginning in September, 2017, emails from attorney Bierhoff would periodically be sent

21          to Tarasiuk and the Debtor.  The plaintiff will show that attorney Beirhoff is fictional and

22          all emails from Bierhoff actually originated with the Debtor.

23   24.    To support the claim that the Debtor owned or had an interest in a house in Germany that

24          would somehow benefit Tarasiuk, the fictional attorney Bierhoff emailed Tarasiuk

25          applications for EU residency.  Tarasiuk was instructed to fill out the forms, and return

26          them to Bierhoff with copies of her current apartment lease, driver's license, and other

27          personal documents.  Tarasiuk did so.

28

COMPLAINT

Latife Neu, Attorney at Law
1825 NW 65th Street
Seattle, WA 98117
(206)297-6349
latife@neulegal.com

4

25. To further support the story about the house in Germany, the Debtor claimed that he had found a tenant to live in the house, which would be facilitated by attorney Bierhoff. The Debtor supplied Tarasiuk with a copy of a residential lease that supposedly showed that the house would be rented out. The lease named the Debtor and Tarasiuk as Landlords.

26. The Debtor claimed he was sending thousands of dollars– all of his available money– to attorney Bierhoff in Germany, and induced Tarasiuk to continue to support him and supply him with money during that time. In October, 2017, the Debtor gave Tarasiuk a Western Union receipt to show he had just sent over $13,000.00 to attorney Bierhoff. Tarasiuk later learned that the receipt was falsified, that Western Union does not process sums of that size, and that the tracking number was false.

27. German attorney Oliver Bierhoff is a fictional person, and emails supposedly from Bierhoff originated from email accounts in the control of the Debtor. The law firm where he supposedly worked never employed such a person. It is unclear at this time whether the Debtor ever had an interest in a house in Cologne, Germany, or whether this was also a fiction.

28. In October, 2017, the Debtor claimed that he had an interest in a business in Germany that had just been sold. The Debtor told Tarasiuk that his share of the proceeds would soon be wired to him. The Debtor identified the co-owner as an Omar Santi, and put Tarasiuk in email contact with Santi, who promised to wire money. On that basis, Tarasiuk was induced to continue to provide financial support and lend money to the Debtor.The plaintiff will show that emails from Santi actually originated from the Debtor.

29. In early 2018, the Debtor told Tarasiuk that he had secured a good job at Boeing, which would provide them both with insurance coverage benefits. To cover this falsehood, the Debtor purchased a vision insurance policy in Tarasiuk's name, and presented that coverage to Tarasiuk as evidence that he had a good job with benefits. Later, Tarasiuk was billed for the insurance coverage, and learned that the policy had nothing to do with Boeing employment.

COMPLAINT

Latife Neu, Attorney at Law
1825 NW 65th Street
Seattle, WA 98117
(206)297-6349
latife@neulegal.com

5

30.  In early 2018, the Debtor showed Tarasiuk a pay summary showing he had been paid over $22,000.00 from an employer in January, 2018.  The document was falsified.  It was provided to induce Tarasiuk to continue to provide financial support and loans to the Debtor.

31.  In May, 2018, the Debtor took Tarasiuk's checkbook and wrote checks to his father without her knowledge or permission.  The bank honored the checks, and the checking account became overdrawn, resulting in fees and costs to Tarasiuk.

32.  In June, 2018, the Debtor moved out of Tarasiuk's home, and agreed to repay her $40,000.00, representing money Tarasiuk spent to support him financially, or gave him, or lent him, or which was taken/used without her permission.

33.  A Note memorializing the Agreement was signed by the Debtor on May 21, 2018, and is attached hereto as Exhibit A.

34.  The Debtor made one payment of $1,000.00 on the Agreement to repay Tarasiuk.

## IV.    FIRST CLAIM FOR RELIEF: NONDISCHARGEABILITY UNDER 11 U.S.C. §523(a)(2) and §523(a)(4)

35.  The above paragraphs 1-34 are incorporated herein by reference.

36.  11 U.S.C. §523(a)(2) provides for the nondischargeability of debts for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud.

37.  11 U.S.C. §523(a)(4) provides for the nondischargeability of debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

**Larceny and Embezzlement**

38.  At various times while living with Tarasiuk, the Debtor used her credit cards without her permission.

39.  At various times while living with Tarasiuk, the Debtor wrote checks on her checking account without her permission.

COMPLAINT

Latife Neu, Attorney at Law
1825 NW 65th Street
Seattle, WA 98117
(206)297-6349
latife@neulegal.com

6

1  40.  At various times while living with Tarasiuk, the Debtor took cash belonging to Tarasiuk

2      without her permission.

3  **Inducement to Extend Credit to Debtor Through False pretenses and False representation**

4  A.  Medical Procedure

5  41.  The Debtor told Tarasiuk that his mother required $3,050.00 to pay for a medical

6      procedure on her eyes.

7  42.  Tarasiuk relied on the truth of that statement, and put the cost of the medical procedure

8      on her credit card.

9  43.  In fact, the Debtor's story was false.  The Debtor's mother had given him $3050.00 to pay

10      to the medical providers on her behalf, which he spent.  The Debtor then fraudulently

11      induced Tarasiuk to pay for the procedure.

12  B.  Legal Fees Paid to Fictional Attorney, Interest in House in Cologne, Germany

13  44.  The Debtor told Tarasiuk that she should help him pay a German attorney named Oliver

14      Bierhoff, so that the Debtor could obtain clear title to a house in Germany.

15  45.  Bierhoff was a fiction invented for three purposes: 1.to continue the lie that the Debtor

16      was well employed, and was spending his earnings on a useful purpose, 2. to induce

17      Tarasiuk to continue to support the Debtor financially, and finally 3. to induce Tarasiuk to

18      hand over her own money to the Debtor to send to the fictional Bierhoff.

19  46.  The debtor fabricated numerous emails from the fictional attorney Bierhoff, purporting to

20      prove that the Debtor was sending his earnings to Bierhoff.

21  47.  The emails supposedly from Bierhoff originated from IP addresses under the Debtor's

22      control.

23  48.  At his continued 341 hearing, the Debtor testified that attorney Bierhoff is real, and gave

24      the Trustee a letter purportedly from Bierhoff.  Plaintiff intends to show that the letter

25      given to the trustee was fabricated by the Debtor.

26  49.  Tarasiuk will establish that attorney Bierhoff was fabricated as part of a scheme to

27      defraud Tarasiuk of funds, and to induce Tarasiuk to continue to support the Debtor

28

COMPLAINT

Latife Neu, Attorney at Law
1825 NW 65th Street
Seattle, WA 98117
(206)297-6349
latife@neulegal.com

7

1         financially.

2   50.    Associated with the fraudulent fabrication of attorney Bierhoff, Tarasiuk intends to

3         establish that the Debtor fabricated evidence that he had an interest in a house in Cologne,

4         Germany. As part of this fraud, the Debtor fabricated a lease agreement under which he

5         claimed to be renting out the fictional house to a fictional tenant. As another part of this

6         fraud, the Debtor told Tarasiuk that he would put her name on the house, which would

7         benefit Tarasiuk in various ways.

8   51.    The fabrication of the story about the house in Cologne, Germany, and the false evidence

9         in support of this story, was intentional, and part of a scheme to induce Tarasiuk to

10        continue to support the Debtor financially, and did so induce Tarasiuk.

11   C.     <u>Funds to Be Transferred to Tarasiuk from Debtor's Relatives in Baghdad</u>

12   52.    The Debtor told Tarasiuk that his relatives in Baghdad, Iraq, would soon sell valuable real

13        estate in Iraq, which would result in repayment of funds spent by Tarasiuk to provide

14        financial support of the Debtor.

15   53.    The Debtor also told Tarasiuk that funds would be sent to her from Iraq, following the

16        sale of a smaller parcel of real estate in that country, to reimburse her for her financial

17        support of the Debtor.

18   54.    In support of this claim, a series of emails were sent to Tarasiuk which claimed to be

19        from the Bank of Baghdad. The emails assured Tarasiuk that a wire transfer in the

20        amount of $25,000.00 would be forthcoming any day.

21   55.    Tarasiuk will establish that the emails from the Bank of Baghdad were fabricated by the

22        Debtor, and came from IP addresses under the control of the Debtor.

23   56.    By fabricating the story about the imminent transfer of money from his family, and false

24        evidence in support of the story, the Debtor intended to induce Tarasiuk to continue to

25        support him financially, and did so induce Tarasiuk.

26   57.    Tarasiuk will show that the promised $25,000.00 was entirely fabricated by the Debtor

27        for the purpose of deceiving Tarasiuk so that she would continue to support the Debtor

28

COMPLAINT

Latife Neu, Attorney at Law
1825 NW 65th Street
Seattle, WA 98117
(206)297-6349
latife@neulegal.com

8

1      financially.

2   D.    Well Paying Job Offers, Proof of Earnings

3   58.   While the Debtor and Tarasiuk were living together, the Debtor was unemployed for a

4          substantial part of the time.  To convince Tarasiuk that he was or would be well

5          employed, the Debtor fabricated numerous documents with the intent to deceive Tarasiuk.

6   59.   The Debtor fabricated emails purporting to show job offers being made to the Debtor, in

7          order to convince Tarasiuk that the Debtor would soon be earning a good living.  This

8          was intended to induce Tarasiuk to continue to provide financial support to the Debtor,

9          and did induce Tarasiuk to do so.

10  60.   The Debtor fabricated pay summaries purporting to show that he earned large amounts of

11         money.  One such pay summary emailed to Tarasiuk by the Debtor showed income of

12         over $22,000.00 in one pay period, and another showed earnings of approximately

13         $12,000.00.

14  61.   In fact, the false pay summaries were intended to deceive Tarasiuk into thinking that the

15         Debtor would eventually contribute financially to their shared household, and to induce

16         her to continue to provide financial support to the Debtor.  The fraudulent documents did

17         induce Tarasiuk to do so.

18  WHEREFORE, Plaintiff Anna Tarasiuk respectfully prays for the following relief:

19  A.    That the Court determine that the full amount of debt set forth in the Agreement attached

20         hereto should be deemed a nondischargeable obligation owed by Debtor- Defendant to

21         Plaintiff under 11 U.S.C. §523(a)(2), (4), and (6); and

22  B.    That the Court enter judgment providing for Plaintiff to recover the above-pled sums,

23         along with reasonable attorney's fees as provided in the Note (Ex. A),

24  C.    That Plaintiff have such other relief as is lawful and appropriate.

25  //

26  //

27  //

28

COMPLAINT

Latife Neu, Attorney at Law
1825 NW 65th Street
Seattle, WA 98117
(206)297-6349
latife@neulegal.com

9

1    DATED this 6th day of January, 2019.

2

3                                            */s/ Latife Neu*
                                             Latife Neu
4                                            WSBA 33144
                                             Attorney for Plaintiff Anna Tarasiuk
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                                              Latife Neu, Attorney at Law
                                                                       1825 NW 65th Street
                                                                       Seattle, WA 98117
                                                                       (206)297-6349
                               10                                      latife@neulegal.com

# EXHIBIT A

# Promissory Note

I, Majid Muhallub Abdulhameed, residing at 742 141st LN Se, Bellevue WA, 98007, hereby promise to pay back Ganna L Tarasiuk *(residing 742 141st LN Se, Bellevue WA, 98007)* at a full amount of borrowed credit cards. As following:

- Chase Freedom - $16k
- BECU Credit Card- $8k
- US bank – credit card - $4k (which was used for my mother's eye surgery)
- Alaska FCU Auto loan - $10k
- Steven Wu $2500, borrowed by Ganna for house deposit.

This money Ganna spent on me during our relationship and engagement, as I was struggling with work and was not able to support myself.

Per our verbal and now written agreement, I am obligated to pay her no less than $1500 every month until all balances are brought to zero. Payment day must be 10th of every month. Target payment is $3000 per month, meaning I must do my best to pay this off as soon as possible.

If I fail to keep up with my promissory and obligation, Ganna has a right to legally demand these amounts in court and legal fees will be reimbursed by debtor ( Majid Abdulhameed).

As the borrower, I am aware of the right to be informed that the note can be transferred by the lender to another party. The original terms and agreement will remain effective, but the debt will be payable to a different party, which will be agreed upon at the time of transfer.

We have witnesses to verbal agreement and this promissory note. They are:
My father Muhallab Majeed and Ganna's cousin Serhii Shnyt. Both residing in the same house with us at the time of this notice being produced.

Majid Abdulhameed          Date  05/21/2018          Signature *alhilali*

Ganna Tarasiuk             Date  05/21/2018          Signature

Serhii Shnyt  (witness)    Date  05/21/2018          Signature